UNITED STATES, Appellee

v.

CLAUD JUNIOR GOODMAN, Corporal, U. S. Army, Appellant

1 USCMA 170, 2 CMR 76

No. 16

Decided February 11, 1952

LT. COL. George E. Mickel, USA, for Appellant.
MAJ. George B. Springston, USA, for Appellee.

Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Upon trial by general court-martial, appellant was found guilty of premeditated murder in violation of the 92nd Article of War, 10 USCA § 1564. He was sentenced to confinement for life, total forfeitures of pay, and a dishonorable discharge. The convening authority approved the action of the court-martial, and the board of review affirmed with opinion on June 28, 1951. We granted the appellant's petition for grant of review, directing argument to the following questions:

1. The sufficiency of the evidence to establish the corpus delicti.

2. The sufficiency of the evidence to support the finding of premeditated murder.

3. The ruling of the law member sustaining the motion of the Trial Judge Advocate to strike testimony of Cho Rin Sung identifying whiskey,

and the comments of the law member as to the qualifications of that witness to so testify.

The trial was held prior to the effective date of the Uniform Code of Military Justice, and was therefore governed by the Articles of War, and the Manual for Courts-Martial, 1949. The facts of the case are briefly set forth.

On the afternoon of April 14, 1951, the appellant was carrying a truckload of Korean laborers, employed by the 44th Engineer Construction Battalion, to their homes in Yoju, Korea, near the Han River. The appellant took a wrong fork in the road which took him away from Yoju. He stopped his truck and directed all the Koreans to alight. He then drove off accompanied by one Korean laborer who was riding with him in the cab of the truck.

Two days later an American First Sergeant was conducted to a spot about thirty-five yards from the main road between Seoul and Yoju. There he found the body of a Korean man lying on his back with what appeared to be a bullet hole through his head. Some twenty-five yards northeast of the spot where the body lay was an expended cartridge case (calibre .30, carbine M1). An agent of the Criminal Investigation Division examined the body and noted a wound in the back of the dead man's head. Said agent testified that the body showed no signs of life, and that in his opinion the man was dead. He further testified that apparently the wound had been made by a bullet of small calibre such as a .30 carbine. The body of the dead man was identified on the evening of the 16th of April as that of An Sung Man, a laborer employed by the 44th Engineers. On the 16th and 17th days of April the appellant gave written statements to the CID and these statements were received in evidence over the objection of defense counsel.

The substance of the statement made by the appellant is, that while driving a truck, and accompanied only by the deceased, he was subjected to a call of nature. He stopped the truck and got off. About this time the Korean passenger called him a vulgar name reflecting upon his parentage. The appellant then partially re-entered the cab of his truck to get his carbine, and as he was attempting to remove the carbine from the truck, the Korean tried to pull him out of the cab. The appellant kicked the Korean who then ran toward the hill. The appellant then fired a shot which struck the ground "three feet from his feet." The appellant then pursued the Korean, who, when overtaken, grabbed the carbine clip from the appellant's pocket and ran. At this point the appellant "upped with my carbine and shot him in the back of the head." In the remainder of his statement the appellant said that he took the deceased's money, noting a hole in the man's head, and his brains lying out on his forehead. The appellant did not take the time to determine whether his victim was alive or dead. The appellant's statement further indicates that he was under the influence of liquor at the time the Korean called him a dirty name.

It is well settled that a conviction for homicide cannot be supported solely by the extrajudicial confession of the accused. There must be some evidence, independent of the confession, tending to prove the corpus delicti before the confession can properly be received in evidence.[1] Mr. Justice Shaw instructing the jury in Commonwealth v. Webster,[2] stated the proposition succinctly when he said: "In a charge of criminal homicide, it is necessary in the first place, by full and substantial evidence, to establish what is technically called the corpus delicti, . . . ."

The Manual for Courts-Martial, U. S. Army, 1949, Sec. 127b reads as follows: "If unlawful homicide is charged, evidence of the death of the person alleged to have been killed, coupled with evidence of circumstances indicating the probability that he was unlawfully killed, will satisfy the rule. . . . "

---

[1] State v. Boswell, 73 RI 358, 56 A2d 196.

[2] As reported by George Bemis, Esq., in his Report of the Case of John W. Webster (1850), p 473.

Practically all the cases[3] supporting the majority rule on the elements of corpus delicti, while they differ in terminology have one common denominator. They require substantial evidence, establishing the death of a human being by unlawful means. The use of phrases: "evidence tending to prove," "under such circumstances as to exclude," "some evidence," and "evidence of circumstances indicating the probability," are simply variations of the substantial evidence rule set out in the case of Forte v. United States, 94 F2d 236, (CA DC Cir). The rule laid down in the Forte case appears to us to be both logical and sound.

Does the record in this case, excluding the confession, indicate that there is substantial evidence of the killing of the person described in the charge, and that the death was caused by some criminal means? The record indicated that the decedent was found about thirty-five yards from the road, quite dead, with a bullet hole through his head from back to front. In the immediate vicinity there was found an expended round of ammunition, commonly issued to the armed forces of the United States. The spot where the dead man was found was not the scene of active conflict, and there is no evidence in the record of local guerilla activity. The deceased's cousin identified the corpse as that of An Sung Man, a laborer employed by the 44th Engineer Construction Battalion. These facts undoubtedly justified the trial court in reaching the conclusion that a homicide had in fact occurred. In other words there was ample evidence of the first element of the corpus delicti.

The further fact that there was a bullet hole through the head of the deceased from back to front, coupled with the presence a short distance away of an expended round of ammunition, in the absence of any evidence of armed conflict or guerrilla activity, justified the trial court in reaching the conclusion that the death was caused by unlawful means. It is not necessary to show by affirmative proof that the possibilities of accident or suicide are nonexistent before evidence is admitted to establish the identity of the person who performed the act in question. The important question is: "Are the circumstances attending the act consistent with the crime?" If so, the corpus delicti is sufficiently proved to allow the admission of the confession of the accused.[4]

In other words, we find that there was substantial evidence in the record to justify the trial court in reaching the conclusion that the corpus delicti was proved in accordance with the requirements of the 1949 Manual. If there was sufficient evidence to justify the trial court in reaching this conclusion we are not, under the circumstances, called upon to set it aside. United States v. McCrary, (No. 4), 1 USCMA 1, 1 CMR 1, and Article 67(d), Uniform Code of Military Justice, 50 USCA § 654.

The appellant maintains that the conviction should be reversed because of the lack of evidence of premeditation. Premeditation has been defined as a prior determination to do an act, but such determination need not exist for any particular period of time before the act is carried out. In fact, it has been almost universally held, that the deliberation and premeditation may be almost instantaneous, though, generally, the authorities require some appreciable lapse of time. Bostic v. United States, 94 F2d 636, (CA DC Cir).

Paragraph 179a of the 1949 Manual defines premeditation as follows:

"Murder does not require premeditation, but if premeditated it is a more serious offense and may be punished by death. A murder is not premeditated unless the thought of taking life was consciously conceived and the act or omission by which it was taken was intended. Premedi-

---

[3] People v. Sameniego, 5 Pac2d 653, Underhill, Criminal Evidence, 4th Ed, pp 567, 569.

[4] Commonwealth v. Gardner, 282 Pa 458, 128 A 87.

**173**

tated murder is murder committed after the formation of a specific intention to kill someone and consideration of the act intended. Premeditation imports substantial, *although brief,* deliberation or design." (Italics supplied)

It is well settled that the premeditation required for conviction of premeditated murder may be ▮▮▮▮▮ inferred from the circumstances attending the killing. Whether or not there has been the required premeditation is a question of fact for the jury or, as in this case, the trial court. The trial court is entitled to examine all the facts of the case, and should carefully consider all the evidence, in reaching a determination as to whether or not premeditation existed. The question is one of fact. Wharton, Criminal Law, ▮▮▮▮▮ page 739. With the corpus delicti properly established, and the confession before the trial court for consideration, we cannot say that there was not sufficient evidence to justify the trial court in reaching the conclusion that this crime was premeditated.

The action of the law member in striking out the testimony of Cho Rin Sung describing "whiskey" was patently error. However, in view of the fact that the testimony stricken concerned itself only with the nomenclature by which an alcoholic beverage was known, and that the witness was ▮▮▮▮▮ then permitted to testify to the fact that the substance seemed like alcohol and, further, that the appellant was, in the opinion of the witness, drunk, we find that no substantial harm resulted from this erroneous ruling.

Accordingly, the decision of the board of review is affirmed.

Judges LATIMER and BROSMAN concur.