UNITED STATES, Appellee

v.

JAMES E. LONG, Private First Class,
U. S. Army, Appellant

2 USCMA 45, 6 CMR 45

No. 529

Decided October 17, 1952

LT. COL. George E. Mickel, USA, for Appellant.

LT. COL. Thayer Chapman, USA, and 1ST LT. Bernard A. Feuerstein, USA, for Appellee.

### Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Upon trial by general court-martial in Korea, the accused was convicted of two offenses of rape, premeditated murder, and two assaults with intent to do bodily harm with a dangerous weapon, all in violation of pertinent Articles of War. He was sentenced to death. Army reviewing authorities have upheld the findings, except that the board of review set aside one of the assault convictions and reduced the premeditated murder to unpremeditated murder. The sentence has been affirmed. The case is here for mandatory review in accordance with Article 67 (b) (1) of the Uni-

46

form Code of Military Justice, 50 USC § 654.

The facts of this case disclose a particularly brutal series of assaults. On May 13, 1951, the accused together with two other soldiers visited a Korean village, after doing some drinking. The accused entered a house in the village and chased out two Koreans. He thereupon assaulted both of the Koreans, striking them in the head with the stock of his carbine. All three soldiers then proceeded to a second village a short distance away. Finding no one there, they started to return to their unit. However, when they neared the first village, the accused stated that he was going back to find one of the Koreans originally assaulted and "work him over some more." The other two soldiers waited a short while for the accused to return and, when he did not, went to find him. They located him in one of the houses, but the accused ordered them to stay outside. This they did until they heard moaning from inside the house. Both soldiers entered the house. One saw an old woman "laying on the floor stripped up to the waist." She was on her back with her legs spread apart, and did not move when touched. The other soldier, upon entering, saw the accused, on top of the old woman, partially undressed. When the other two soldiers entered, the accused got off the woman and dressed himself. Upon inquiry, the accused stated that "I guess I hit her too hard; I think I killed her." Later, the woman's husband returned home and found his 67-year-old wife dead in the kitchen. He observed contusions on her body. The body was later examined by an Army medical officer, who reported numerous lacerations and bruises. At some time prior to or after the above occurrence, an eleven-year-old granddaughter of the Koreans was, according to her testimony, raped by one of the soldiers. The act hurt her considerably. One of the accused's companions testified that, upon leaving the house, the accused remarked that he had, in raping the little girl, injured her rather severely. The girl was later examined by an Army doctor who found extensive lacerations in the vaginal area.

A military police investigator testified that he examined the scene of the occurrence on the following day and found the body of an elderly Korean woman. Extensive bruises and lacerations were observed on the body, and pieces of a carbine stock were found nearby. Expert testimony established that these pieces of wood came from the carbine which had been issued to the accused.

Most of the above facts brought out by testimony of the Koreans and the accused's companions were admitted by the accused in a confession received in evidence at the trial. The brutal assaults upon the two Korean men were described in detail, and he also admitted forcing the little Korean girl to submit to intercourse. He told of hitting the old woman in the face and, while she lay on the floor, having intercourse with her. He stated that "while I was having intercourse with her she started to come to. I hit her about four or five times with my fist in the face. I thought she was dead. I picked her up and pushed her around and she rolled over on her face. When I pushed her she let out some air or something through her mouth." He concluded the statement by saying that he was so intoxicated during the entire incident that he did not know what he was doing.

The accused, as noted above, was found guilty of the rape of both the woman and the girl, the premeditated murder of the woman, and the assaults with intent to do bodily harm with a dangerous weapon upon the two Korean men. The board of review set aside one of the assault convictions, reduced the homicide conviction to unpremeditated murder, and otherwise affirmed. Appellate defense counsel has argued in this Court several alleged errors which we shall consider seriatim.

It is first claimed that there is insufficient evidence outside the confession to establish corpus delicti of each of the offenses. We have reiterated in previous opinions the test which this Court will apply in assessing the sufficiency of corroborative evidence. See United States v. Uchihara (No. 60), 1 USCMA 123, 2 CMR 29, decided Febru-

ary 4, 1952; United States v. Goodman (No. 16), 1 USCMA 170, 2 CMR 76, decided February 11, 1952; United States v. Brooks (No. 18), 1 USCMA 88, 1 CMR 88, decided December 28, 1951; United States v. Evans (No. 143), 1 USCMA 207, 2 CMR 113, decided March 10, 1952. In those opinions, we indicated adherence to a rule of corroboration which requires substantial evidence showing that the crime charged was probably committed by some person. We have no doubt that the test is here satisfied. As to the murder, it was established that witnesses observed the accused endeavoring to have intercourse with the woman, that she was found dead thereafter, and that her body was covered with bruises and lacerations. Although the medical experts could not positively state the cause ·of death, it is reasonably clear that death followed shortly after a rather severe beating. This is, we think, sufficient evidence to establish that an unlawful killing was accomplished by human agency.

As to the rape of the woman, there is the testimony of accused's companion that he observed the accused laying on top of the partially undressed woman with his private parts exposed. It was quite clear from the evidence of the woman's age and bodily wounds that she was not submitting voluntarily to the act of the accused. The granddaughter testified that immediately prior to the incident the woman was alive. Immediately afterwards, she appeared to be dead. True it is that, omitting the accused's confession, the evidence does not clearly establish that the woman was alive during the alleged act of intercourse. However, in producing evidence corroborative of the confession, we do not think it incumbent upon the prosecution to eliminate every possibility of noncriminality. It is sufficient that the woman was admittedly alive immediately prior to the assault and alleged act of intercourse and that the accused was observed in a position indicating almost conclusively that he was engaged in the act. As to the corroborative evidence on the rape of the little girl, there is her testimony that she was forced to submit to the accused. To this may be added the testimony of vaginal injury by the doctor. There can be no doubt as to the establishment of the corpus delicti of the assault charge remaining. The accused's companions described the assault in detail. We, therefore, conclude that there is no merit to the defense contention that the accused's confession was not sufficiently corroborated. Adding the incriminating statements made at the time of the incident and the confession, it is clear that all offenses were proved beyond a reasonable doubt.

Defense challenges the competency of the eleven-year-old Korean girl as a witness. The record indicates that this girl was extremely reluctant to testify, and only did so after considerable coaxing and offering of candy by the trial counsel. Both trial and defense counsel did engage her in preliminary questioning as to her understanding of the obligation to tell the truth and her intelligence and understanding. Her testimony, when given, was clear, albeit hesitant, and was consistent, and intelligent. Her reluctance to testify can be explained on reasonable grounds that this was a bashful, frightened Korean child of eleven years who had recently suffered severe, embarrassing and humiliating injury. There was no indication at the trial that defense counsel was not, after the preliminary inquiry, satisfied with the competence of the child as a witness. Under these circumstances, we cannot say that the law officer abused his discretion in permitting the girl to testify. United States v. Slozes (No. 12), 1 USCMA 47, 1 CMR 47, decided November 20, 1951.

We turn, finally, to the instructions of the law officer. He gave to the court the elements of the three offenses of murder, rape, and aggravated assault in the language appearing in the applicable paragraphs of the Manual for Courts-Martial, U. S. Army, 1949. He referred the court to the Manual discussions of competency of children as witnesses and the effect of intoxication upon specific intent. Upon request by the defense, he also instructed the court on

the elements of voluntary manslaughter by referring them to the Manual discussion of that offense.

It is first alleged by the defense in relation to the instructions that the law officer erred in not instructing the court on the effect of intoxication as an affirmative defense. We have already held that voluntary intoxication, while it may reduce premeditated murder to unpremeditated murder, will not reduce murder to manslaughter. United States v. Roman (No. 191), 1 USCMA 244, 2 CMR 150, decided March 19, 1952. Here, the finding of premeditated murder has already been reduced to unpremeditated murder by the board of review. Proof of intoxication by itself could reduce the offense no further. Therefore, even admitting that it may have been error not to instruct the court on the effect of intoxication in relation to the lesser offense of unpremeditated murder (and we do not deem it necessary to decide the question of whether there was here sufficient evidence of intoxication to properly raise the issue), the reducing action taken by the board of review removes any prejudice that may have resulted therefrom. There was ample evidence of a killing deliberately committed while engaged in rape. The board of review gave the accused the benefit of the doubt by reducing the degree of homicide. We find no evidence raising any lesser offense as a reasonable alternative and therefore no necessity for instruction on the elements of those offenses.

The instructions on the charge of rape are criticized by the defense on the ground that, although the law officer gave the elements of carnal knowledge, use of force, and lack of consent, he erred in not defining each of these terms. With this we cannot agree. These are not words of art, having a special connotation in the eyes of the law. See United States. v. Williams (No. 251), 1 USCMA 231, 2 CMR 137, decided March 14, 1952. Defense at the trial requested no explanation or definition, and there is no indication that there was any confusion in the minds of the court members.

The last issue in relation to the instructions concerns the statements of the law officer relative to the offense of assault with intent to do great bodily harm with a dangerous weapon. Here, he read verbatim the elements of the offense from paragraph 180*l* of the Manual for Courts-Martial, U. S. Army, 1949. The element of specific intent to do bodily harm was thus omitted. This was prejudicial error that requires us to set aside this finding. United States v. Hopf (No. 372), 1 USCMA 584, 5 CMR 12, decided August 14, 1952; United States v. Cromartie. (No. 374), 1 USCMA 551, 4 CMR 143, decided August 6, 1952. However, we affirm so much of the finding of guilty as involves the lesser included offense of assault with a dangerous weapon. United States v. Hunter (No. 359), 2 USCMA 37, 6 CMR 37, decided this day.

We have found no prejudicial error except the failure to fully instruct on the assault charge. Our action on this comparatively minor matter, however, does not require us to return the case to a board of review for reconsideration of the sentence. The conviction is affirmed.

Judge LATIMER concurs.

BROSMAN, Judge (concurring):
I concur fully in the opinion of the Court, but I should like to add a brief caveat. In United States v. Keith (No. 226), 1 USCMA 442, 4 CMR 34, decided July 3, 1952, we held that we were without statutory authority to make a determination of sentence appropriateness as a matter of fact. However, we left "for future consideration the question of whether appropriateness—or its opposite—may be determined by us in a proper case as a matter of law."

I think it important to note that in the present case we have not determined appropriateness—that is, adequacy—either as a matter of fact or as a matter of law, although the sentence as affirmed is, of course, within legal limits. We have simply sought to avoid the per-