UNITED STATES, Appellee

v.

WILLIAM JOSEPH GREENLEE, Yeoman Seaman,
U. S. Navy, Appellant

3 USCMA 284, 12 CMR 40

CDR Edwin G. Moorhead, USNR, and LT COL K. E. Murphy, USMCR, for Appellant.

CAPT Carl G. Lutz, USMCR, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

A special court-martial, convened at the United States Naval Receiving Station, Seattle, Washington, convicted the accused, Greenlee, together with two other sailors, of the violation of a lawful general regulation, the offense proscribed by Article 92 (1), Uniform Code of Military Justice, 50 USC § 686 (1). The convening authority approved the conviction, and a board of review in the office of The Judge Advocate General, United States Navy, has affirmed. A petition of accused, Greenlee, for further review was granted for determination of the matters hereafter considered.

II

The specification lodged against the petitioner alleged specifically that he violated "article 1269, U. S. ▉▉▉▉▉▉ ▉ Navy Regulations, 1948, by possessing alcoholic liquor, to wit: beer, for beverage purposes in an unauthorized place at the . . . naval receiving station, to wit: the leave office in building number 204." It is argued on his behalf that this specification does not allege an offense —in that Article 1269, U. S. Navy Regulations, does not prohibit the possession of liquor as alleged. As we interpret the situation, it comes to this. Article 1269 prohibits the use of alcoholic liquors for beverage purposes in naval installations located in states or territories where such use is generally unlawful. This prohibition is inapplicable here, for the State of Washington—the jurisdiction in which the misconduct alleged transpired—does not proscribe the use of intoxicating liquor. However, the Article goes on to provide that:

"Subject to the foregoing, the introduction, possession and use of alcoholic liquors for beverage purposes are authorized within naval stations and other places ashore under naval jurisdiction to the extent and in such manner as the Secretary of the Navy may prescribe."

It is to be noted that the Article itself contains no specific restriction on the use of liquor where not forbidden by local law, but, on the other hand, specifically provides for its use only "to the extent and in such manner as the Secretary of the Navy may prescribe."

Although not specifically mentioned in the specification, our attention has been appropriately directed—as was that of the court-martial—to General Order No. 15, promulgated by the acting Secretary of the Navy on November 4, 1948, in necessary implementation of Article 1269, U. S. Navy Regulations. This General Order states initially that its provisions shall not relieve a commanding officer of responsibility with regard to regulation of the use of alcoholic beverages within his command. It then proceeds in terms to authorize the possession and use of intoxicating liquor for beverage purposes within shore activities under naval jurisdiction *in officers' quarters, and in quarters—other than barracks— assigned to civilian employees and enlisted personnel*. In a succeeding paragraph, the Order provides that, upon approval by designated authorities, commanding officers may also permit the sale and consumption of beer and ale of commercial strength in enlisted men's clubs and recreation centers. Terminally, it states that—subject to administrative regulations—command-

ing officers shall issue detailed instructions prohibiting sale of alcoholic beverages to minors and otherwise conforming to applicable local laws.

It is accused's contention that neither Article 1269 nor General Order No. 15 prohibits the possession or use of liquor at any place—with the result that the specification upon which this prosecution is based does not allege an offense. We do not hesitate to reject this argument. It is certainly true that Article 1269 does not, within its own phrasing, contain detailed and specific regulations governing the use of liquor. However, the clear import of its language is that the use of alcoholic beverages within naval installations, where such use would not contravene local law, is wholly prohibited, save to the extent and in the manner prescribed by the Secretary of the Navy. Too, General Order No. 15 may not, standing alone, bar completely the possession and use of intoxicating liquor—but this we need not decide, for it does not stand alone. Of necessity it must be considered in conjunction with its authoritative foundation, namely, Article 1269, U. S. Navy Regulations. The necessary import of the latter, as we have seen, is to prohibit the possession and use of alcoholic beverages on a station, such as that involved here, *except to the extent authorized by the Secretary of the Navy.* In General Order No. 15, the Secretary of the Navy authorized possession and use of liquor in described living quarters, other than barracks, and, subject to certain limitations, in recreation centers and the like. It is totally devoid of authorization for the possession and use of alcoholic beverages in places such as that involved here—that is, "the leave office in building number 204." Accordingly, the possession and use charged in this case, falling as it does, outside the limits authorized by the Secretary of the Navy in General Order No. 15, violated the ban of Article 1269, U. S. Navy Regulations.

The argument of the accused is that the reaffirmance in General Order No. 15 of ultimate responsibility in local commanding officers operates to vest complete authority over the possession and use of intoxicants in such officials. This borders on the specious. It is quite clear to us that the General Order does no more in this connection than place supervisory responsibility in local commanding officers and authority as well—but only within the limits set by the General Order itself. For example, we are sure that a local commanding officer could not, in the teeth of the Order, effectively authorize the possession and use of alcoholic beverages, say, in enlisted men's barracks. However, he certainly could authorize and regulate the use of intoxicants in officers' quarters.

In conclusion, therefore, we hold that the specification does allege an offense on the part of petitioner. Article 1269, U. S. Navy Regulations, together with General Order No. 15, establishes a clear pattern for the regulation and use of alcoholic beverages within naval installations. However, our earlier analysis requires the conclusion that it was Article 1269 which was actually violated. This is precisely what was charged. Perhaps the optimum in pleading would have required a specific reference on the charge sheet to General Order No. 15, as well as to Article 1269. However, it has long been settled in this Court that military tribunals are no longer bound by the ancient rigor of pleading at common law. United States v. Marker, 1 US CMA 393, 3 CMR 127, decided May 19, 1952; United States v. Snyder, 1 USCMA 423, 4 CMR 15, decided June 5, 1952; United States v. Sell, 3 US CMA 202, 11 CMR 202, decided August 14, 1953.

On its face, the specification in this case was based on Article 1269, U. S. Navy Regulations, which in turn authorizes and directs the promulgation of General Order No. 15. To find meaning in that part of the Article with which we are concerned, one simply must look at the Order. The Manual for Courts-Martial, United States, 1951, paragraph 87$a$(2), reads as follows:

"The proceedings as to a specification should not be held invalid sole-

ly because the specification is defective unless it appears from the record that the accused was in fact misled by such defect or that his substantial rights were in fact otherwise materially prejudiced thereby. The test of the sufficiency of a specification is not whether it could have been made more definite and certain, but whether the facts alleged therein and reasonably implied therefrom set forth the offense sought to be charged with sufficient particularity to apprise the accused of what he must defend against, and whether the record is sufficient to enable him to avoid a second prosecution for the same offense."

There is not the slightest indication that accused and his counsel were misled, or in any degree left uninformed, by an absence from the specification of express reference to General Order No. 15. On the contrary, defense counsel at the trial specifically invited the court-martial to take judicial notice of General Order No. 15. Had clarification been desired, it could have been the subject of an appropriate motion. Manual, *supra,* paragraphs 67, 69.

### III

At the conclusion of the evidence, the president of the special court-martial instructed as follows *inter alia:*

"The court is advised that the elements of the offenses are as follows:
". . . In the case of . . . William J. Greenlee, Violation of Article 92, violating or failing to obey *any* lawful general order or regulation." [Emphasis supplied.]

This instruction, the accused contends, is so broad and general as to amount to no instruction at all. Without conceding error, appellate counsel for the Government has elected to advance no argument with respect to this point, nor did he brief it. Quite clearly, we think, there is merit in the position of the defense. The instruction is much too loose. In truth, it is so lacking in specificity as to provide no basis for the exercise of the fact-finding powers vested in the court-martial. See United States v. Welch, 1 USCMA 402, 3 CMR 136, decided May 27, 1952; United States v. Gilbertson, 1 USCMA 465, 4 CMR 57, decided July 22, 1952. A conviction resting on such an instruction cannot stand.

The conviction is reversed and a rehearing ordered.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in part and dissenting in part):

I concur in part and assent in part.

I concur in all parts of the opinion except that portion which deals with the subject of an erroneous instruction. Because I believe any irregularity in that regard is trial minutia, I dissent from the reversal and the reasons therefor. Obviously, it was error for the law officer to tell the court-martial members they could return a finding of guilty if they found the accused violated any general regulation. However, I am unable to find *any* sound basis for a holding that the instruction had a tendency to mislead the court-martial and, therefore, was prejudicial to one of accused's substantial rights.

There was only one offense charged in one specification and it was stated in the following language:

"In that William J. Greenlee . . . did, at the U. S. Naval Receiving Station, Seattle, Washington, on 18 February 1952, violate a lawful general regulation, to wit: article 1269, U. S. Navy Regulations, 1948, by possessing alcoholic liquor, to wit: beer, for beverage purposes in an unauthorized place at the said naval receiving station, to wit: the leave office in building number 204."

The evidence produced at the trial was directed solely to proving possession of beer in the leave office as it was the only alleged violation of Article 1269, U. S. Navy Regulations, and evidence of any other violation would have been incompetent. The sole point in issue was whether there had been a violation of that particular regulation. Arguments were pointed to that issue at the commencement of trial; during the progress of the trial the theories of both parties narrowed into one; and

**287**

when counsel were finally summing up the law and the evidence in their concluding arguments, they stressed only the single point of a violation of a specific order in a specific manner. It is, therefore, unreasonable to conclude that a court-martial would wander outside an area of dispute, well-identified and clearly known to all, to conjure up some other unknown violation of an unidentified regulation as a basis to support a finding of guilty. Here the analogy of a mountain and a molehill of evidence is inapplicable, as there is no molehill.