UNITED STATES, Appellee

v

NATHAN MALLOW, Department of the Army Civilian,
GS–5, Appellant

7 USCMA 116, 21 CMR 242

No. 6536

Decided June 8, 1956

*Jacob P. Lefkowitz, Esq.*, argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Jackson K. Judy* and *Lieutenant Colonel Edward Duvall.*

*First Lieutenant Arnold I. Burns* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton, First Lieutenant Howard S. Marcu,* and *First Lieutenant Lewis W. Evans.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

As this case reaches us, it involves an American civilian employee of the Department of the Army, who stands convicted of three separate offenses of violating a general regulation of the United States Army Forces, Far East, contrary to Article 92, Uniform Code of Military Justice, 50 USC § 686. The three crimes involve prohibited money transactions, and the violative acts were alleged to be: (1) wrongful and unlawful purchases by the accused of dollar instruments valued at $38,025.00, a sum in excess of his pay and allowances for the period involved; and (2) wrongful and unlawful purchases by accused of two mail transfers of $2,000.00 each in the name of a third person, with funds which were owned by and belonged to the accused, each purchase being a separate offense. In addition, the accused stands convicted of a fourth offense which was charged as a violation of Article 81, Uniform Code of Military Justice, 50 USC § 675. That offense consists of a conspiracy between the accused and a named enlisted man to violate the clause of the regulation which prohibits the purchase and remission of money, for third parties, through a military financial facility. All four offenses were founded, directly or indirectly, upon

alleged violations of Circular Number 3, Headquarters, United States Army Forces, Far East, dated January 26, 1953.

Accused was sentenced originally to pay a fine of $25,000.00, to be confined at hard labor for five years, and to be further confined until the fine was paid, but for not more than seven additional years. The convening authority affirmed the findings and approved the fine of $25,000.00, but reduced the confinement at hard labor to four years, and also reduced the additional confinement by providing that the accused must remain incarcerated until the fine was paid, but for not more than four years.

A board of review in the office of The Judge Advocate General of the Army made it unnecessary for us to consider the findings of guilt on the two offenses alleged in specifications 1 and 2 of Charge I, as it set them aside and ordered the specifications dismissed. All other findings were affirmed, but because of its action in dismissing the two offenses, the board modified the punishment in the following manner. It approved the fine of $25,000.00, reduced the confinement at hard labor to three years, and limited the coercive confinement until the fine was paid to not more than three years.

We granted the accused's petition for review and limited arguments to the following issues: (1) Whether the instructions by the law officer on the elements of the offense alleged in the specifications of Charges I and II were sufficient; and (2) whether his instruction to the effect that it was incumbent upon the accused to bring himself within the exception mentioned in the regulation was erroneous.

After briefs had been filed and oral arguments heard, and while this cause was pending, the Supreme Court handed down its decision in Toth v Quarles, 350 US 11, 76 S Ct 1, 100 L ed —— (Adv p 4) (1955). The result reached in that opinion, together with some of the language used therein, caused us to give consideration to the question of court-martial jurisdiction over this accused. Out of an abundance of cau-

tion for the rights of the accused, we ordered reargument on the jurisdictional issue alone. We will consider that matter first, for if it were decided in favor of the accused, all other discussion would be futile.

## II

In United States v Burney, 6 USCMA 776, 21 CMR 98, we gave exhaustive consideration to the question of the constitutionality of Article 2(11) of the Code, 50 USC § 552, the statute upon which jurisdiction is founded in this case. We there concluded that, on the basis of precedent, history, and logic, that particular subsection of the Article possessed no constitutional infirmity. Most of what was said there is equally pertinent here, adequately disposes of the issue, and will not be repeated. Although some attempt was made by counsel to distinguish Burney, we are sure that the effort revealed no adequate ground for a different conclusion. This accused, a civilian employee of the Department of the Army, was assigned to, and worked for, the Billeting Section, Headquarters, Camp Tokyo, Japan, and he was not a member of the Japanese community. Therefore, he falls within the express terms of Article 2 (11), supra.

## III

We next must deal with the merits of the issues we granted in the first instance. Because of the nature of the questions involved, it is only necessary that we discuss two of the specifications pleaded on the charge sheet, for Specification 3 of Charge I is representative of all the allegations under that Charge. Accordingly, we set out Specification 3 of Charge I and Specification 1, Charge II, verbatim:

"Specification 3: In that Nathan Mallow, civilian employee of the Department of the Army, GS-5, . . . a person serving with, employed by, and accompanying the Armed Forces of the United States without the continental limits of the United States, . . . did, at Tokyo, Honshu, Japan, from about 27 May 1953 to about 10 December 1953, violate a lawful gen-

**119**

eral regulation, to-wit: Paragraph 20c, Section III, Circular Number 3, Headquarters, United States Army Forces, Far East, APO 343, dated 26 January 1953, by wrongfully and unlawfully purchasing from the Chase National Bank of the City of New York, Tokyo Branch, Military Banking Facility, about 344 dollar instruments of a value of about $38,-025.00, a sum in excess of his pay and allowances.

. . . . . .

"CHARGE II: Violation of the Uniform Code of Military Justice, Article 81.

"Specification: In that Nathan Mallow, civilian employee of the Department of the Army, GS–5, . . . a person serving with, employed by, and accompanying the Armed Forces of the United States without the continental limits of the United States, . . . did, at Tokyo, Honshu, Japan, on or about 29 June 1953, conspire with Sergeant Henry Morin, U. S. Army, . . . to commit an offense under the Uniform Code of Military Justice, to-wit: the unlawful remittance of money belonging to the said Nathan Mallow through a Military Banking Facility in violation of Paragraph 20, Section III, Circular Number 3, Headquarters, United States Army Forces, Far East, APO 343, dated 26 January 1953, a lawful general regulation, and in order to effect the object of the conspiracy, the said Nathan Mallow, on or about 29 June 1953 and on or about 20 July 1953, caused the said Sergeant Henry Morin to execute and to have authenticated by his commanding officer, two (2) false application to Remit Funds forms (FEC Form 432), each for the sum of $2,000.00, and to execute two (2) false applications to the Chase National Bank of the City of New York, Tokyo Branch, Military Banking Facility, to transfer funds by mail, each for the sum of $2,000.00, which false documents, the said Nathan Mallow presented to the Chase National Bank of the City of New York, Tokyo Branch, Military Banking Facility and thereupon purchased, on or about 29 June 1953, a mail transfer of funds to the Chase National Bank of the City of New York, New York, New York in the sum of $2,000.00 for the account of the Nationwide Automobile Sales Company, New York, New York, and on or about 20 July 1953, a mail transfer of funds to the Chase National Bank of the City of New York, New York, New York, in the sum of $2,000.00 for the account of the Nationwide Automobile Sales Company, New York, New York, each with Military Payment Certificates belonging to the said Nathan Mallow and which were not the property of the said Sergeant Henry Morin as stated in the two Applications to Remit Funds forms (FEC Form 432) and the two applications to the Chase National Bank of the City of New York, Tokyo Branch, Military Banking Facility, executed by the said Sergeant Henry Morin."

The particular portion of the regulation which is the basis of all the charges is identified in the record as Paragraph 20c, Circular 3, Headquarters United States Army Forces, Far East, APO 343, dated January 26, 1953. It reads as follows:

"United States authorized personnel are prohibited from purchasing or otherwise obtaining or tendering demand drafts, traveler's checks, bank money orders, traveler's letters of credit, mail or cable transfers, and other dollar instruments for an individual or firm or for the account of an unauthorized individual or firm, and are prohibited from purchasing such instruments or otherwise remitting funds out of a country where military payment certifications are used in excess of their pay and allowances, except when under unusual circumstances they have acquired larger amounts of military payment certificates legally, i.e., income from sources outside the country concerned, sale of car, furniture, or other personal effects, and can substantiate such acquisition."

A short resume of the facts is necessary to present these issues in their

proper light. The first specification quoted above charges a violation of that portion of the quoted circular which prohibits the remittance of funds from Japan in excess of the pay and allowances received by the remitter. To support the charge, the Government established that from May 29, 1953, to on or about December 10, 1953, the accused received something less than $2,000.00 in pay and allowances, yet during the same period he remitted to his immediate family and business firms approximately 344 dollar instruments and bank drafts totaling $38,025.00. While he personally did not testify, he sought to raise an inference that his income varied and that he won and lost large sums of money by gambling.

The other three offenses alleged arose out of two transactions with one Sergeant Morin. They find their root in that part of the Circular which prohibits the procurement of dollar instruments for another person or firm, or for the account of either. To support those offenses, the Government established that the accused approached Sergeant Morin and offered to pay him $1,000.00 if he would acquire the approval of military authorities and obtain the remittances necessary to purchase an automobile in the United States and have it shipped to Japan. The sergeant agreed, and on two occasions (June 29, 1953, and July 20, 1953), he had his commanding officer approve requests for substantial remittances as required by regulation. The papers were turned over to the accused, who presented them to the local bank, and the funds were remitted to an automobile dealer in New York City. Singularly enough, the testimony established that the accused withdrew substantial sums from his savings account on the identical dates in question.

At the close of argument, the law officer gave the following instructions to the members of the court to guide them in their deliberations on all the offenses except the conspiracy charge:

"I will now instruct the court as to the elements of the offenses as required by Article 51c of the Uniform Code of Military Justice. The court

is advised that in order to find the accused guilty of Specifications 1, 2, 3, 4 and 5 of Charge I it must be satisfied by legal and competent evidence beyond a reasonable doubt that there was in effect a lawful general regulation as alleged in each specification; that at the time and place and in the manner alleged in each specification the accused violated the general regulation."

Pretermitting his instructions on the necessary overt act, his guideposts on the conspiracy offense were these:

"The court is advised that to find the accused guilty of the Specification of Charge II it must be satisfied by legal and competent evidence beyond a reasonable doubt that at the time and place alleged the accused entered into an agreement with Henry Morin; that the object of the agreement was to violate Paragraph 20, Section III, Circular 3, Headquarters, United States Army Forces, Far East, APO 343, dated 26 January 1953, a lawful general regulation, an offense under the Uniform Code of Military Justice; and, that thereafter the accused or Henry Morin performed an overt act to effect the object of the conspiracy as alleged.

"The court is further advised in this connection that the elements of the offense of violating a general regulation are as follows: That such a lawful general regulation was in full force and effect; and, that at the time and place and in the manner alleged the accused violated the lawful general regulation. It is not essential, however, that the offense of violating the lawful general regulation be proved. It is only necessary that the court be satisfied by legal and competent evidence beyond a reasonable doubt that the accused entered into an agreement with Henry Morin, the object of which was to commit the offense of violating the lawful general regulation, and that thereafter the accused or Henry Morin performed an overt act to effect the object of the conspiracy."

IV

We pass the conspiracy charge for

121

the moment and give heed to petitioner's arguments on the other offenses. This is not the first occasion we have had to consider the sufficiency of instructions given in regard to the violation of a general regulation. In United States v Greenlee, 3 USCMA 284, 12 CMR 40; United States v Landrum, 4 USCMA 707, 16 CMR 281; and United States v Jett, 5 USCMA 476, 18 CMR 100, a majority of the Court laid down some of the principles which fixed a measuring rod for instructions of this type. In the first and last cited cases, it was held that the instructions given were so indefinite, broad, and uncertain that they failed to provide guideposts for the court-martial members to use when they were deliberating on the findings of guilt or innocence. In the other instance, it was held the instructions were so sweeping that the amplifying instruction which was specifically requested should have been given. It is now urged upon us by defense counsel that those cases control the disposition of the instant case because they are, for all practical purposes, indistinguishable. If no other facts were to be considered, we might be prepared to accept the conclusion, but we discern another matter of importance.

In United States v Greenlee, supra; United States v Landrum, supra; and United States v Jett, supra, it was the view of the present author Judge that there was no dispute as to which general regulation formed a base for the prosecution; that the issue concerned the question of whether the accused had violated a well-identified specific regulation in a particular manner; that the instructions, by referring to the elements set out in the specifications, were minimally sufficient to require the court members to find all of the essential elements of the offense alleged before returning a verdict of guilt; and that, while clarifying or amplifying instructions might have been desirable, they were not requested and thus waived. United States v Long, 2 USCMA 45, 6 CMR 45; United States v Johnson, 3 USCMA 447, 13 CMR 3.

In United States v Clay, 1 USCMA 74, 1 CMR 74, one of our earliest decisions, we held that a law officer has the duty to instruct, sua sponte, on the elements of those offenses which are in issue, and we have steadfastly adhered to that principle. However, we have also recognized that defense counsel bears some burden in this field, if an orderly procedure is to be evolved. Thus, if no miscarriage of justice was involved, we have required counsel to request clarifying instructions on the elements of the offense charged, United States v Long, supra, and held him to a waiver where he permitted, without challenge, the law officer to instruct by reference to counsel's own enumeration of the required elements. United States v Smith, 2 USCMA 440, 9 CMR 70. We have also permitted defense counsel to shape the issues of his case by consciously preventing the law officer from instructing on lesser included offenses put in issue by the evidence, United States v Mundy, 2 USCMA 500, 9 CMR 130; United States v Bowers, 3 USCMA 615, 14 CMR 33; United States v Jackson, 5 USCMA 584, 18 CMR 208; even in capital cases, United States v Snyder, 6 USCMA 692, 21 CMR 14. Furthermore, we have invoked the rule of waiver as to many collateral issues in the instructional field. United States v Fisher, 4 USCMA 152, 15 CMR 152; United States v Henry, 4 USCMA 158, 15 CMR 158; United States v Phillips, 3 USCMA 137, 11 CMR 137; United States v Bigger, 2 USCMA 297, 8 CMR 97; United States v Schumacher, 2 USCMA 134, 7 CMR 10; United States v Riggins, 2 USCMA 451, 9 CMR 81.

Turning to the facts of this case, it is worth noting that each court-martial member had a copy of the allegations before him. There was no dispute as to the identity of the circular or the terms, and provisions therein contained, and it is certain that the court members were aware of the conduct proscribed, for the trial counsel read the pertinent paragraph aloud at the time when the regulation was judicially noted. Moreover, there was no doubt but what the accused had remitted to the United States a sum far in excess of his pay and allowances. The only shadow of an issue at trial was whether he had

substantiated his claim that he had acquired the large sums remitted from a legal source other than his pay and allowances, thus coming within the exception set forth in the regulation. Cast in this light, the law officer's instructions, by reference and incorporation, became sufficient to cast upon defending counsel the necessity of requesting other instructions if those given were thought to be inadequate. Especially is that true when it is considered that the law officer went on to deal specifically with the rule to be followed when the accused defends upon a claimed exception in the regulation. It is to be remembered that civilian defense counsel in this case expressly declined to request additional instructions when invited to do so. He must have concluded that the charge given was ample to meet the demands of justice.

V

Most of what we have said previously applies to accused's next contention that the instructions on the conspiracy offense were inadequate. The law officer gave, inter alia, the following instructions regarding that offense:

"The court is advised that to find the accused guilty of the Specification of Charge II it must be satisfied by legal and competent evidence beyond a reasonable doubt that at the time and place alleged the accused entered into an agreement with Henry Morin; that the object of the agreement was to violate Paragraph 20, Section III, Circular 3, Headquarters, United States Army Forces, Far East, APO 343, dated 26 January 1953, a lawful general regulation, an offense under the Uniform Code of Military Justice; and, that thereafter the accused or Henry Morin performed an overt act to effect the object of the conspiracy as alleged."

The instruction given here includes a designation of the circular and the requirements that the court-martial must find the time and place that the accused entered into an agreement with Sergeant Morin; that the object of the conspiracy was to violate the particular paragraph of the identified circular;

and that an overt act to effect the object of the conspiracy was performed. The elements of the offense of violating a regulation were defined, and there were other instructions given which explained in detail the content of the words "overt act." When considered as a whole, the instructions outline the theory set out in the Manual for Courts-Martial, United States, 1951, paragraph 160, page 305–306, which provides:

"To constitute the offense of conspiracy under the code, there must be a combination of two or more persons who have agreed to accomplish, by concerted action, an unlawful purpose or some purpose not in itself unlawful by unlawful means and, the doing of some act by one or more of the conspirators to effect the object of that agreement."

This principle finds support in Federal holdings, and we need do no more than to call attention to Bannon & Mulkey v United States, 156 US 464, 15 S Ct 467, 39 L ed 494 (1895), wherein the Supreme Court of the United States said:

". . . The gist of the offense is still the unlawful combination, which must be proven against all the members of the conspiracy, each one of whom is then held responsible for the acts of all . . . It has always been, however, and is still the law, that, after prima facie evidence of an unlawful combination has been introduced, the act of any one of the co-conspirators in furtherance of such combination may be properly given in evidence against all . . ."

Again, the absence of a request by the defense counsel for additional instructions makes it unnecessary for us to consider his contention that a better instructional pattern should have been furnished the court-martial.

VI

The law officer gave the following instructions from which the third granted issue evolves:

"The court is further advised that when a regulation prohibits a certain act, except under certain conditions,

**123**

it is not incumbent on the prosecution to establish by proof that the accused was not within the exceptions stated in the regulation. The prosecution establishes a prima facie case by proving the existence of such a regulation and acts of the accused amounting to a violation of the provisions of that regulation. It is incumbent upon the accused to establish that his acts fall within the exceptions to the regulations, if such was the case."

It is the contention of the appellant that the law officer committed two errors which prejudiced the right of the accused to a fair trial. First, he improperly shifted the burden of proof to the accused. Second, he changed the time-honored principle that the evidence of the Government must convince beyond a reasonable doubt. Neither branch of counsel's attack can be sustained successfully.

At this point, we note two items of some importance. The first is that the law officer in his final charge specifically directed the court members to bear in mind that the burden was on the Government to prove beyond a reasonable doubt that accused was guilty. The second particular is that there was no real issue over whether the accused was in an excepted category. For the latter reason, the accused was made the beneficiary of a theory not raised reasonably by the evidence. In explanation of this statement, we call attention to an out-of-court conference in which defense counsel rejected a proffered theory that accused had brought himself into the excepted category because he won the money gambling. When that issue began to take form, the law officer suggested it as a possible theory and defense counsel countered by saying: "I am going to make one amendment. The defense has not shown the accused won money gambling." But we can go one step further and disregard counsel's concession. When we do that, we still cannot find a scintilla of evidence to show that accused obtained the money under any unusual legal circumstances.

The instruction may not be a model of perfection, but even in its present language it did not prejudice the accused. The law officer was correct in saying that it was not incumbent upon the prosecution to negate the exception. The regulation was intended to, and does, make the prohibition all-inclusive. In interpreting this particular provision, it must be considered that all remittances over and above the amount received as pay and allowances are prohibited. The offense is accurately defined and proven without regard to the exception, and if there is no evidence regarding the exception, the offense can still be established. It is only necessary for the Government to negate the possibility of the accused being within the excepted class if the exception is an essential ingredient of the crime, and here it is not.

There is another reason why the law officer was not wrong in stating that the burden was not on the Government. The position which we took in United States v Gohagen, 2 USCMA 175, 7 CMR 51, and followed in United States v Blau, 5 USCMA 232, 17 CMR 232, explains why he did not err. In the former case we said:

"The remaining question has to do with whether it was incumbent on the prosecution to *establish by proof* that accused was not to be found within the exceptions stated in the circular. Again we are compelled to respond in the negative. The following language of Mr. Justice Cardozo, in Morrison v California, 291 US 82, 88–91, 78 L ed 664, 669–670, 54 S Ct 281, is particularly appropriate:

'. . . The decisions are manifold that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse of explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to

the accuser without subjecting the accused to hardship or oppression. . . .

'. . . For a transfer of the burden, experience must teach that the evidence held to be inculpatory has at least a sinister significance . . . or if this at times be lacking, there must be in any event a manifest disparity in convenience of proof and opportunity for knowledge, as, for instance, where a general prohibition is applicable to every one who is unable to bring himself within the range of an exception . . . . The list is not exhaustive. Other instances may have arisen or may develop in the future where the balance of convenience can be redressed without oppression to the defendant through the same procedural expedient. The decisive considerations are too variable, too much distinctions of degree, too dependent in last analysis upon a common sense estimate of fairness or of facilities of proof, to be crowded into a formula. One can do no more than adumbrate them; sharper definition must await the specific case as it arises.' "

When we apply the principle therein announced to this case, we conclude that this law officer was on firm ground. The record establishes the court-martial took judicial notice of paragraph 20c of Circular 3, Headquarters United States Army Forces, Far East, APO 343, dated January 26, 1953, which prohibited the purchase of dollar instruments, or the remittance of funds out of the country, in excess of pay and allowances. As an exception, it also provided that amounts in excess of the mentioned sums might be remitted "under unusual circumstances" when legally acquired and the lawfulness of the acquisition of the funds substantiated. The prosecution evidence showed without dispute that the appellant remitted $38,025.00, a sum far in excess of his pay and allowances. Those acts, in the light of other circumstances, had the appearance of being wrongful. At that juncture, it was incumbent upon accused either to raise an issue that he was within the exception provided by the circular, or suffer the court to infer that his acts were outside the pale of the exception. Unfortunately for the accused, the record contains no evidence to show he had received authorization to remit more than approximately $2,000.00, or that his excess of remittances over his Government income consisted of funds obtained from unusual legal sources.

The law officer inartfully stated that it was incumbent upon Mallow to establish that his acts fell within the exceptions to the regulation. Undoubtedly, the legal burden placed on the accused is no more than to produce some evidence, regardless of its source, to raise reasonably an issue that he is within the excepted class. If he goes that far, he may raise reasonable doubt about his guilt, and in the final analysis, the burden does not shift from the Government to establish the offense beyond a reasonable doubt. It is to be noted that the law officer did not require the exception to be established by any given quantum of proof, but he did tell the court members that before they could return a finding of guilty, they must be convinced beyond a reasonable doubt that the Government had established all essential elements of the offense. Because of that instruction, and the burden cast on the accused in cases such as this to come forward and raise reasonably an issue, which burden was not met in this instance, we cannot fairly find any prejudice to the accused flowing from the inept expression used by the law officer.

VII

Although not within the issues framed by this Court, it is the contention of the appellant that the law officer committed error by not giving sufficient instructions as to the presumption of innocence, reasonable doubt, and circumstantial evidence. We are unable to ascertain the basis for this argument, because the record clearly shows these points were adequately covered by the law officer in accordance with the requirements of Article 51(c), Uniform Code of Military Justice, 50 USC § 626.

Also mentioned by the appellant was the omission of instructions on the

failure of the accused to testify, and the effect of the uncor- ██ roborated testimony of an accomplice. Despite appellant's argument, the law officer is not required to give unrequested instructions on the above-mentioned points. Stout v United States, 227 Fed 799 (CA 8th Cir) (1915) ; United States v Schreiber, 5 USCMA 602, 18 CMR 226.

The decision of the board of review is affirmed.

Judge FERGUSON concurs.

QUINN, Chief Judge (concurring in the result) :

When requested, defense counsel specifically asserted that he was satisfied with the instructions given and that he had no request for further instructions. Moreover, there were no internal conflicts in the regulations which require the court members to speculate as to the elements applicable to the offenses charged. See United States v Gray, 6 USCMA 615, 20 CMR 331. Under the circumstances, the accused cannot now complain of a purported insufficiency in the instructions. Accordingly, I concur in the result.