UNITED STATES, Appellee

v

DWIGHT L. JENKINS, Airman Basic, U. S. Air Force, Appellant

No. 26,537

June 22, 1973

*Major Paul K. Lewis, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Colonel George M. Wilson.*

*Major Stark O. Sanders, Jr.,* argued the cause for Appellee, United States. With him on the brief was *Colonel C. F. Bennett.*

## OPINION OF THE COURT

DUNCAN, Judge:

We believe the facts and circumstances of this case warrant reversal.

Prior to entering the Air Force, appellant had a facial skin condition called pseudofolliculitis barbae. This condition is predominant among black males and is caused by extremely curly facial hairs growing back into the skin after they have first grown out. This causes pimples much like acne. Appellant avoided this condition by allowing his beard to grow. However, in service, shaving every day caused the problem to become acute. Jenkins consulted Air Force physicians and participated in various shaving clinics to alleviate the condition. He tried every remedy recommended—using an adjustable razor on a very low setting, shaving lightly twice a day using an electric razor, using depilatories, shaving only every few days, and not shaving at all. Appellant testified that not shaving at all was the only method that completely alleviated the condition. The other remedies would give only temporary relief.

After about two years of experimentation, Lieutenant Colonel Robert X. Williams, a physician at Blythville Air Force Base, Arkansas, issued appellant a permanent waiver from shaving on a Form 422, Physical Profile Report, dated February 9, 1972, a form designed for profile changes. In addition to stating that this waiver was permanent, this form also provided that the accused should keep facial hair closely trimmed with scissors. The doctor told appellant this waiver would be good at any Air Force base.

Subsequently, the appellant was as-

signed to the 3320th Retraining Group, Lowry Air Force Base, Colorado. There his team chief informed him that his shaving waiver was not good at Lowry and that he would have to go to a shaving clinic. Then he was given 1-month shaving waivers in March and April 1972. He went to the hospital in May where he saw Dr. Noto who was in charge of the shaving clinic at the time and was given another Form 422. This profile form, dated May 5, 1972, and signed by Dr. Noto, indicates a change from a 2P permanent condition to a 2T temporary condition and provides for a temporary shaving waiver with the date June 5, 1972, set forth as the date of the end of the period of waiver. Jenkins testified that in June 1972, he was informed by the doctor in charge of the shaving clinic that a new regulation would preclude any further waivers for 30 days, but that he would be given one "for every two days."

On June 13, 1972, Master Sergeant Pulliam, a security police representative at the retraining group, had a discussion about complying with AFM 35-10, paragraph 1-12(5), September 3, 1971.[1] He stated that he was aware of the accused's shaving waivers from Blythville and Lowry and that the latest one instructed him to shave every two days. Sergeant Pulliam escorted appellant to the dispensary where he was seen by Dr. Fagan. Dr. Fagan talked with the appellant about pseudofolliculitis barbae, the treatments for the condition, and examined his face. Appellant showed Dr. Fagan the profile form issued by Dr. Williams; however, Dr. Fagan refused to give appellant any further shaving waivers telling him that he could not see sufficient evidence of a problem.

Upon leaving the doctor's office, the appellant and Sergeant Pulliam returned to the Sergeant's office where appellant was asked whether he was going to shave since the waiver had been withdrawn. Jenkins replied that he was not going to shave because there was sufficient justification in his record to show that he did have a chronic problem which justified his not shaving. The sergeant then ordered accused to go shave and return later that day. Jenkins said he had no intention of complying with that order, and he did not comply with it.

Appellant was tried and found guilty by a special court-martial of failure to obey a lawful general regulation to wit: AFM 35-10, paragraph 1-12(5), specification 1, and of failure to obey a lawful order to shave, specification 2, in violation of Article 92, UCMJ, 10 USC § 892. He was sentenced to a bad-conduct discharge, forfeiture of $191.00 per month for 3 months, and confinement at hard labor for 3 months. The sentence was approved by the convening authority and the place of confinement was designated as the 3320th Retraining Group, Lowry Air Force Base, for immediate entry into the retraining program. The bad-conduct discharge, forfeitures, and confinement were suspended until November 20, 1972, with a provision for automatic remission. The Court of Military Review affirmed the findings and sentence.

We conclude that the evidence is insufficient to prove that appellant failed to obey the regulation. AFM 35-10, ATC Supplement 1, paragraph 1-12a(5), December 30, 1971, states that

[o]nly a verified, complete AF Form 422, *Change of Physical Profile,* is sufficient documentation to permit the wear of a beard or other special privilege on a medical basis.

Appellant had such a form signed by Dr. Williams at Blythville, who told him it would protect him at any Air Force base. Appellant stated that he considered this to be a permanent shaving waiver. Dr. Fagan at Lowry, testified to the effect that:

(a) He never attempted to contact Dr. Williams;

---

[1] Paragraph 1-12(5) provides in pertinent part:

Beards and Goatees. The face will be clean-shaven other than the wear of an acceptable mustache or sideburns. Beards and Goatees are prohibited, except that a medical officer may grant a waiver for the wear of a beard for medical reasons.

(b) He had no idea what his authority would be to change a permanent profile to something less;

(c) He had never given a permanent shaving waiver;

(d) He was not sure there existed any regulation authorizing a permanent waiver; and

(e) He never examined appellant's medical records to determine the extent of his problem.

Regulation AFM 35-10 provides that a properly completed Form 422 is sufficient to permit the wearing of a beard for medical reasons. There is no evidence of record that a written permanent waiver cannot be given or that if given it can be revoked by the means used by Dr. Noto or Dr. Fagan.

In the instant case appellant had the burden of bringing himself within the exception to the regulation. United States v Mallow, 7 USCMA 116, 21 CMR 242 (1956); United States v Blau, 5 USCMA 232, 17 CMR 232 (1954); United States v Christophe, 2 USCMA 375, 9 CMR 5 (1953); United States v Gohagen, 2 USCMA 175, 7 CMR 51 (1953). As we stated in *Mallow,* supra at 125, 21 CMR at 251:

> [T]he legal burden placed on the accused is no more than to produce some evidence, regardless of its source, to raise reasonably an issue that he is within the excepted class. If he goes that far, he may raise reasonable doubt about his guilt, and in the final analysis, the burden does not shift from the Government to establish the offense beyond a reasonable doubt.

We believe that appellant met his burden of reasonably raising an issue that he was in the excepted class. His unrebutted testimony regarding what Dr. Williams had told him, and his posses-sion of Form 422 with provisions for a permanent shaving waiver issued to him by the doctor, tends to raise reasonable doubt about his guilt. Looking to the Government's evidence, we observe that Dr. Fagan had no idea whatsoever whether Jenkins' permanent waiver could be revoked. This is not to say that there may not be a procedure for changing a serviceman's profile or that once a permanent physical profile change is given it cannot be revoked, but only that this record does not shed enough light for us to determine whether the acts of medical personnel at Lowry properly changed Jenkins' profile.[2] Dr. Noto, completing a Form 422, apparently attempted to change appellant's waiver to a temporary waiver. Since Dr. Noto did not testify, the record does not relate the basis for the change. Further, the burden was upon the Government to rebut the presumption of regularity of the *permanent* waiver which was issued to appellant under the exception provision of the regulation before any subsequent countervening waiver or order was issued. No proof was presented that Colonel Williams could not give a permanent shaving waiver effective at any Air Force base. Indeed, the Colonel was apparently under the impression that he could grant such a waiver and in fact he so informed the appellant.

The facts of this case indicate that even though appellant acquiesced in the 30-day waivers given him at Lowry,[3] he always considered the permanent waiver given him at Blythville to be valid and controlling. In fact, appellant stated that he was under the impression that the temporary 30-day waivers would go on indefinitely. Also, he had only trimmed his beard since being at Lowry and had not shaved it. Therefore, it appears that he did nothing inconsistent with his claim that he was acting under the hon-

---

[2] Doctor Fagan did testify that in changing a soldier's profile from normal to permanent 4, a medical board is needed and in a change from normal to permanent 2, such a board was not required. When asked whether a change from permanent 2 to normal could be made, he responded that a change to permanent meant that the condition could not be rectified.

[3] Appellant testified that since he was already in the retraining group he did not want to get into any further difficulty so he did not contest the change at the time, but he still retained in his possession the permanent waiver given him by Colonel Williams.

est and reasonable belief that a valid waiver permanently excusing him from shaving existed. In total, the appellant acted on the belief that he would not be required to shave even though different procedures were used at Lowry. If he were mistaken, and we do not find facts indicative of an unreasonable or dishonest mistake, such mistake operates as a defense. United States v Pendergrass, 17 USCMA 391, 38 CMR 189 (1968); United States v Hill, 13 USCMA 158, 32 CMR 158 (1962); United States v Smith, 9 USCMA 317, 26 CMR 97 (1958); and United States v Thornton, 8 USCMA 446, 24 CMR 256 (1957).

Dr. Fagan's testimony reveals that he does not consider the presence of pseudo-folliculitis barbae a permanent problem. It appears that Dr. Williams believed it to be a permanent problem, at least a problem on-going enough that he authorized a permanent waiver. Thus, the real base of the appellant's quandary lies in the different prognosis of the physicians. So viewed, it is improper to hold the appellant criminally responsible for relying on Dr. Williams' conclusion rather than Dr. Fagan's. By failing to demonstrate by facts that Jenkins' reliance on Dr. Williams' action was unreasonable or that the permanent waiver from shaving aspect of his profile was properly changed by either Dr. Noto or Dr. Fagan, the Government has not adduced sufficient evidence of criminal conduct.

It necessarily follows that since appellant's conviction cannot stand for violating the shaving regulation, specification 2, of failure to obey Sergeant Pulliam's order to shave, which was premised on the sergeant's knowledge that appellant was in violation of the regulation, likewise cannot stand for we have held that an order to obey the regulation, which he had a duty to obey, cannot be used to enhance or add on to the punishment. United States v Wartsbaugh, 21 USCMA 535, 45 CMR 309 (1972); United States v Nixon, 21 USCMA 480, 45 CMR 254 (1972); United States v Bratcher, 18 USCMA 125, 39 CMR 125 (1969); United States v Williams, 18 USCMA 78, 39 CMR 78 (1968).

Accordingly, the decision of the Court of Military Review is reversed and the Charge and its specifications are dismissed.

QUINN, Judge concurs.

DARDEN, Chief Judge (dissenting):

As I view this case, the issue is whether one Air Force physician may revoke a so-called permanent profile if a later examination discloses that the reasons for the original exception no longer exist.

Dr. Fagan testified that he had the authority to change profile limitations. Dr. Noto made a change in the accused's profile, and such a change appears to be authorized by Air Force Manual 160-1, Medical Examinations and Medical Standards (1971). The accused testified that he was notified of the change and that Dr. Fagan had informed him he no longer had a shaving waiver.

In these circumstances, I would not accord controlling significance to the accused's testimony about the continuing validity of a shaving waiver. In my opinion, his testimony presented only a factual question of whether the earlier waiver could be revoked. Because I believe this record supports the military judge's finding that the existence of every element of the offense charged was established beyond a reasonable doubt, United States v Guerra, 13 USCMA 463, 32 CMR 463 (1963), I would affirm the decision of the U. S. Air Force Court of Military Review.