UNITED STATES, Appellee

v.

ROY L. STABLER, Private E–2, U. S. Army, Appellant

4 USCMA 125, 15 CMR 125

No. 3979

Decided April 2, 1954

Lt Col George M. Thorpe, U. S. Army, and 1st Lt John W. Fuhrman, U. S. Army, for Appellant.

Lt Col William R. Ward, U. S. Army, and 1st Lt Roderick V. Brown, U. S. Army, for Appellee.

## Opinion of the Court

Paul W. Brosman, Judge:

The accused, Stabler, was convicted by a general court-martial sitting at Camp Rucker, Alabama, of desertion with intent to shirk important service, in violation of the Uniform Code of Military Justice, Article 85, 50 USC § 679. The court adjudged the maximum sentence—dishonorable discharge, total forfeitures, and confinement at hard labor for five years—and the convening authority approved. An Army board of review affirmed the findings, but halved the sentence in its confinement aspect. We granted review to determine whether the instructions contained error prejudicial to the accused.

II

The prosecution rested its case solely

on documentary evidence, which consisted of two morning report extract copies, together with an extract of special orders directing the accused—among others—to report to Camp Kilmer, New Jersey, for reassignment to a European station. The accused, testifying in his own behalf, admitted that he had received the extract of orders, but maintained that because of the elaborate use of unintelligible abbreviations therein, he did not understand that he was to receive an overseas assignment at Kilmer. According to his testimony, the accused was informed by no one of his eventual destination, and had heard no comment by other members of his unit—many of whom were on the same orders—which suggested that he was en route to Europe.

Despite the challenged abbreviations, the accused appears to have been able to ascertain from his orders that he had been granted seven days leave—with one day travel time—en route from his post at Fort Jackson, South Carolina, to Camp Kilmer. He testified that he had gone to his home in Mobile in mid-April; that he had lacked sufficient funds to proceed to Kilmer; and that at the time of his apprehension he was awaiting financial assistance from a sister, who was to receive a Government check at the end of May. The sister had received one such check during the latter part of April, but at that time could not afford to supply the money for the accused's return. He asserted that he was not aware that it was possible for him to surrender at Brookley Air Force Base in Mobile, his residence of record, and there secure Government transportation to his destination. He did not consider the alternative of "hitchhiking," he said, because he had not earlier traveled in that fashion. The accused also stated that he was apprehended by Air Police in Mobile at his family's home and his home of record. The court—following extensive examination of the accused by its members—appears to have rejected his story, and returned findings of guilty as charged following a deliberation of five minutes.

III

In instructing the court, the law officer properly advised that an ingredient of the offense alleged was ▮▮▮▮▮ ▮ that the accused "knew that he would be required for" the important service alleged. Having informed the court of the elements of the crime, the law officer instructed on circumstantial evidence as follows:

"Knowledge on the part of the accused, like any other fact, may be proved by circumstantial evidence. It must be shown that the accused *knew or that he should have known by the exercise of reasonable intelligence* of his duties that he was earmarked and scheduled for moving to a port of embarkation for foreign duty or beyond the continental limits of the United States, or service in a combat or other dangerous area. Thus, you must take all the evidence that is before you and determine, according to common experience of mankind, whether or not the accused knew that he was scheduled for overseas shipment to the Far East Command or the European Command." [Emphasis supplied.]

Defense counsel now argue that the instructional reference to that which the accused "should have known" operated to introduce into the offense an element of constructive knowledge, and would have permitted conviction through a determination by the court that the accused was negligent in failing to know of the impending shipment to Europe. Since the accused had admitted receipt of the extract of special orders pertaining to himself, a conclusion that he might lawfully be convicted by reason of constructive knowledge would equate to a judicial admission of guilt—this for the reason that, save under the most extraordinary circumstances, a military person must be deemed to labor under a duty to attempt to learn the meaning of a written order known to relate to himself. Since actual knowledge is a prerequisite for conviction of the offense charged here, an instruction that constructive knowledge might lawfully be relied on would, we consider, have prejudiced the accused in the instant case.

Our interpretation, however, is that the words now complained of by the defense did not produce this result. The law officer had previously delineated the elements of the offense of desertion with intent to shirk important service quite without mention of words implying the utility of constructive knowledge. The questioned phrase, "knew or that he should have known," constituted part of an instruction devoted to circumstantial evidence and inferences permissible on the part of the court-martial. It is true that the word "should" is frequently used to express *obligation* of some sort. At the same time, in frequent parlance it is also used to connote *probability*. It would not, for example, violate common usage to say: "If the rifle was fired ten feet from X, he should have heard the report." In this usage it is clear that the word "should" implied no sort or moral or other obligation to hear, but only suggests a high degree of probability based on common experience that a certain event occurred—in the exemplary case, that X heard the sound of gun fire. Similarly in the case at bar, we believe that, taken in context, the instruction must be construed to express no more than the possibility of an inference on the part of court members that the accused did, in fact, know of his pending reassignment to Europe.

We are not to be understood as approving the law officer's choice of language. There are, indeed, more artful ways of putting the concept of which he sought to inform the court. This is not to say, however, that his phrasing sank to the level of error. This is true for two reasons. In the first place, the utilization of "should" comports with a permissible usage of the word. And in the second, the portion of the instructions set out above —when read as a *whole*—safely indicates the necessity for a finding of knowledge, which in ordinary acceptance means *actual* knowledge. We have often said that we will look at the charge as a whole and will determine on that basis whether the court was clearly, fully, and fairly instructed. United States v. Hatchett, 2 USCMA 482, 9 CMR 112; United States v. O'Briski, 2 USCMA 361, 8 CMR 161; United States v. Roman, 1 USCMA 244, 2 CMR 150. We are sure that there was no danger here. However, had he feared its presence, defense counsel should have requested clarification. United States v. Long, 2 USCMA 45, 6 CMR 45; United States v. Biesak, 3 USCMA 714, 14 CMR 132.

IV

At a later point in the instructions, the law officer properly advised the court that no inference of an intent to shirk important service arose by virtue of "an admission involved in the plea" of guilty of unauthorized absence, in violation of Article 86 of the Code, 50 USC § 680—and that "to warrant conviction of shirking important service, the evidence must establish this intent." Thereafter he added:

". . . In this connection, the court is advised that an intent on the part of the accused to shirk important service and that the accused knew that he would be required for such service may be proved not only by direct evidence of the accused's statement of such intent but also by circumstantial evidence, that is, evidence of facts and circumstances from which, according to the common experience of mankind, such an intent and knowledge may reasonably be inferred, *such as evidence of failure to comply with competent orders for service in a combat or other dangerous area, embarkation for foreign duty beyond the continental limits of the United States or a movement to a port of embarkation for that purpose.* If, under all the evidence including proper inferences, you are satisfied beyond a reasonable doubt that the accused intended to shirk important service, you should find the accused guilty as charged; otherwise you must find the accused not guilty of shirking important service. . . ." [Emphasis supplied.]

Before commenting on the defense's next contention, it should be noted that here again the law officer referred to

128

what the accused "knew," wholly without qualifying language—a factor strengthening our conclusion that the court could not have understood mistakenly that the law officer's instructions authorized a conviction predicated on the accused's constructive knowledge.

With regard to that section of the instructions quoted last above, the defense contends that the italicized portion placed undue stress on the accused's failure to comply with his orders for service overseas. It is further urged by counsel that a failure to comply with orders may not properly support an inference either as to intent or as to knowledge. Whether in most situations evidence of a failure to comply with overseas orders would permit an inference that an accused knew of the impending duty and intended to shirk it, we need not now decide. However, within the context of the case at bar—and in light of the accused's explicit testimony that he had received such orders and understood at least some portion thereof—we are sure that intent and knowledge could permissibly have been inferred as explaining his failure to report to Camp Kilmer. Indeed, a contrary conclusion would be tantamount to a denial of the sufficiency of the evidence to support the finding—and on this question we entertain no doubt.

It is to be noted that the law officer did not inform court members that they *must* convict the accused of the deser-

tion charged because of his failure to report. Had this been his purpose, there would have been no need for the extensive instructions on circumstantial evidence—this for the reason that accused had admitted from the witness stand that he had received orders and had not reported pursuant thereto. We cannot see that the law officer was in any way contradicting his prior advice that knowledge and intent were part of the offense alleged. Indeed, when considered in perspective, the instruction quoted seems intended to highlight the notion that more was involved in the specification than simple unauthorized absence, to which the accused had pleaded guilty. The instruction adverted to what "may reasonably be inferred," not to what must be inferred.

Having examined the instructions carefully and as a whole, we have concluded that, at worst, they were inartfully phrased, and that defense counsel—had he thought them confusing—should have demanded amplification. We may add that we detect no showing of partisanship in the law officer's instructions, nor do we consider that he acted improperly in seeking to advise the court concerning inferences permissible in its deliberations.

From the foregoing it follows that the opinion of the board of review must be affirmed.

Chief Judge QUINN and Judge LATIMER concur.