UNITED STATES, Appellee

v

MILTON H. TROUTT, Specialist First Class, U. S. Army, Appellant

8 USCMA 436, 24 CMR 246

No. 9560

Decided November 22, 1957

*First Lieutenant Phillip L. Evans* argued the cause for Appellant, Accused. With him on the brief was *Major Edward Fenig.*

*First Lieutenant Chester F. Relyea* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant James G. Duffy.*

ROBERT E. QUINN, Chief Judge:

A general court-martial sitting in Heidelberg, Germany, convicted the accused of stealing over $1500 from the Schwetzingen Community Enlisted Men's Club Fund, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. It imposed a sentence which includes a punitive discharge and confinement at hard labor for three years. A board of review affirmed the findings of guilty but modified the sentence by reducing the period of confinement to 18 months.

Two matters are before us. The first is a petition for a new trial. The second is whether certain principles referred to by the board of review in its opinion are correct.

We have carefully examined the petition for new trial and its supporting papers. For the most part, the averments merely restate the evidence adduced at the trial. From these, the accused would have us conclude that a civilian employee of the club stole the money. The same contention was made at the trial. Defense counsel very forcefully argued this aspect of the defense. Some of his closing remarks to the court-martial are as follows:

"He [the accused] wasn't saying it was stolen. He doesn't know. He isn't saying Mr. Stoessel took it, and I am not saying Mr. Stoessel took it, but Mr. Stoessel was there that day.

. . . . .

"Now, how about Mr. Stoessel? He admitted having access to the lower part of the safe. He admitted handling large sums of money on many occasions during October. As a matter of fact, he made conflicting statements on that particular point. He testified under oath on two different days here at this trial that on only one occasion had the money he handled amounted to more than $1,000.00. He was sure of that. Yet he did not deny making a positive statement to the CID on 17 November 1955 that on many occasions his cash receipts—this is Mr. Stoessel—

on many occasions his cash receipt amounted to more than $1,000.00.

"Let's take a look at his bookkeeping methods. I don't think Mr. Stoessel would like us to take too close a look, but we will.

. . . . .

"Then, we have another sidelight on Mr. Stoessel. After he was placed on restriction, Mr. Stoessel goes over to see Troutt's girl friend. Troutt isn't around any more. Mr. Stoessel wants to take her home. The girl doesn't go for that. But, what is Stoessel's story? The CID agent told him to go see Alma Knebel. He said Specialist McKinney told him that. Specialist McKinney states he never said anything about going to see Alma Knebel."

Since the evidence is not "newly discovered," it provides no ground for a new trial. Article 73, Uniform Code of Military Justice, 10 USC § 873; United States v Childs, 5 USCMA 270, 17 CMR 270; United States v Bourchier, 5 USCMA 15, 17 CMR 15.

The remaining allegations in the petition for new trial refer to certain posttrial activities by Stoessel, such as the purchase of a new car on credit and some heavy drinking. It is implied that Stoessel's display of wealth and his indifference to money show that he was somehow connected with the theft of the club's funds. However, at defense counsel's request the Public Prosecutor of Mannheim, Germany, investigated Stoessel's activities after the trial. In his report the Prosecutor said that the investigation "did not reveal any evidence of the . . . commission of the offense" by Stoessel, and that the amount of his spending was consistent with his income. But even if we were to disregard the Public Prosecutor's report, the proferred evidence does not justify the grant of a new trial. At the trial, Stoessel was subjected to searching cross-examination by defense counsel. Nothing in the evidence now presented indicates that he lied in any material respect. Cf. United States v Turner, 7 USCMA 38, 21 CMR 164.

438

At best, therefore, the "new" evidence would merely serve to affect Stoessel's general credibility. That issue "has been decided adversely to the accused," and he is not entitled to have it relitigated. United States v Bourchier, supra, page 25. Accordingly, the petition for a new trial is denied.

The second matter in issue concerns the principles of law applied by the board of review. With patent awareness of its grave responsibilities in the review of a case, the board of review wrote an opinion setting out the matters it regarded as especially important. In part, it said:

"The prosecution at the trial level, and Government Appellate Counsel here rely upon the well-known presumption:

"'* * * It may be presumed that one who had assumed the custody of the property of another has stolen such property if he does not or cannot account for or deliver it at the time an accounting or delivery is required * * *' Paragraph 138a, Manual for Courts-Martial, 1951)

to establish accused's guilt. Accused's counsel contended that, on the basis of logic and reason, presumptions are not evidence but merely procedural devices adopted for the sake of expediency and are valid only in the absence of any contrary evidence. The latter view overlooks the essential qualification that the contrary evidence relied upon to overcome the presumption must be accepted or believed by the triers of fact (See United States v. Biesak (No. 2676), 3 USCMA 714, 14 CMR 132). The court here was charged with weighing all the evidence, including accused's testimony; and we cannot say that they failed to give proper weight to the latter. *We recognize that the above presumption imposes a heavy burden upon an accused,* and that there may well be instances in which a custodian of funds, innocent of embezzlement, may be unable to account for them. However, such issues are for the trial courts

to decide; the law is well settled [citing cases]." [Emphasis supplied.]

The accused argues that the board of review deprived him of the presumption of innocence, and, in effect, shifted to him the burden of raising a reasonable doubt as to his guilt. See Duncan v United States, 23 F2d 3 (CA 7th Cir) (1927). In its brief, the Government concedes that the accused's "interpretation is conceivable." It argues, however, that, "in the light of other comments made" by the board of review, the "more reasonable" construction is that the board of review was merely stating the common-sense inference that could be drawn from the failure of a custodian to deliver, or to account for, property entrusted to him when he is required to deliver or to account. See United States v Valencia, 1 USCMA 415, 4 CMR 7.

Sometimes the words used to convey an idea are not as precise as they ought to be. Nevertheless, the meaning can be clearly discerned. In such instances, we can disregard the inartful phraseology to reach the essence of the statement. United States v Mallow, 7 US CMA 116, 21 CMR 242; United States v Stabler, 4 USCMA 125, 15 CMR 125. Here, the Government admits that there are two permissible constructions of the board of review's language. One of these constructions indicates the application of an erroneous principle of law. Under the circumstances, we prefer not to guess or to choose arbitrarily between them. United States v Nastro, 7 USCMA 373, 22 CMR 163; United States v Berry, 6 USCMA 609, 20 CMR 325; United States v Moreno, 5 USCMA 500, 18 CMR 124. In a substantially similar situation in connection with a ruling by the law officer, we said in the *Berry* case supra, page 614, "a conviction should not rest upon uncertainty and confusion concerning the correct principles of law applicable to a vital part of the case."

The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General for resubmission to the board of review

for consideration of the case on the merits in the light of our opinion.

Judge FERGUSON concurs.

LATIMER, Judge (concurring in part and dissenting in part):

I concur with my associates in that part of the opinion which disposes of the motion for a new trial. As to the second issue discussed, I must dissent. Without getting into a legalistic debate over the difference between a "presumption" and a "common-sense inference," I hope to demonstrate that the board of review was quoting certain provisions from the Manual for Courts-Martial, United States, 1951, and using the term as it is defined therein. It is to be remembered that a board of review is an appellate body manned by lawyers, and I believe it fair to assume that they are acquainted with military law and give unto words and phrases the meaning generally accepted by the system in which they toil.

In its opinion the board of review writes:

"The prosecution at the trial level, and Government Appellate Counsel here rely upon the well known presumption:

"* * * It may be presumed that one who had assumed the custody of the property of another has stolen such property if he does not or cannot account for or deliver it at the time an accounting or delivery is required * * *' (Paragraph 138a, Manual for Courts-Martial, 1951)."

Perhaps one unacquainted with military law might immediately have some reservations as to the meaning of the word "presumption" as used by the board. However, he has only to note that the board in the quoted part of its opinion referred to paragraph 138a of the Manual, and a reference to that section will remove all doubt. There it is stated:

"*Presumptions.*—With certain exceptions, the word 'presumptions' as used in this manual means no more than 'justifiable inference' and the word 'presume' means no more than 'justifiably infer.' "

Certainly, by citing this section of the Manual, I am convinced that the board, when speaking of presumptions, was using the term in its military sense, viz., inference. But this does not exhaust support for my contention as the board then goes on to cite United States v Biesak, 3 USCMA 714, 722, 14 CMR 132. In that case, Judge Brosman, speaking for a unanimous court, said:

". . . However, as a 'general proposition'—and unlike the customary civilian usage, which deems the term, 'presumption,' to signify solely a conditionally compulsory inference— military law uses the word as subsuming 'merely justifiable inferences,' in weighing which members 'must apply their common sense and their general knowledge of human nature and the ordinary affairs of life.' Manual, idem. Cf. Manual for Courts-Martial, U. S. Army, 1949, paragraph 125a; Manual for Courts-Martial, U. S. Army, 1928, paragraph 112a. Thus, rightly or wrongly, a 'presumption' in military law is normally to be construed as no more than a principle of circumstantial evidence. Reference to a permissive, rather than a mandatory, inference was, we think, intended by the law officer who furnished the instruction attacked in the instant case; and this meaning the members of the court-martial would, we believe, have attributed to the instruction on considering it as a whole."

Finally, the board relies on United States v Mullaly, 9 CMR 150, 154, in which another board of review was confronted with the same "presumption." That case states:

". . . This evidentiary conflict presented a clear cut issue of fact to be determined by the court, i. e., was the accused's explanation sufficiently reasonable of belief as to overcome the justifiable inference of the accused's intent to appropriate. Obviously, the court resolved this issue against the accused."

440

The board of review cites these cases with approval, and I assume the individual members were informed of the principles they propound. Therefore, I am convinced we do not have to speculate that they erred for the opinion itself ought to satisfy any reader that they were not using the term "presumption" in any sense other than "justifiable inference."

In view of the fact that this justifiable inference will support a finding of guilty, United States v Valencia, 1 US CMA 415, 4 CMR 7, I see nothing erroneous in the statement of the board that it "imposes a heavy burden upon the accused."

I would affirm the decision of the board of review.