# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, HERRING, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class ERICK A. MEDRANO**
**United States Army, Appellant**

ARMY 20140167

Headquarters, 2d Infantry Division
Colonel Wendy Daknis, Military Judge
Lieutenant Colonel Lance S. Hamilton, Staff Judge Advocate

For Appellant: Captain J. David Hammond, JA (argued); Lieutenant Colonel Jonathan F. Potter, JA; Major Christopher D. Coleman, JA; J. David Hammond (on brief and petition for new trial).

For Appellee: Captain Anne C. Hsieh, JA (argued); Major Daniel D. Derner, JA; Captain Anne C. Hsieh, JA (on brief); Major A.G. Courie III, JA; MAJ Steven J. Collins, JA; Captain Anne C. Hsieh, JA (on answer to petition for new trial).

29 December 2016

---------------------------------------------------------------------------------------------
MEMORANDUM OPINION AND ACTION ON PETITION FOR NEW TRIAL
---------------------------------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MULLIGAN, Senior Judge:

A panel composed of officer and enlisted members convicted appellant, contrary to his pleas, of attempted voluntary manslaughter, damaging nonmilitary property, and drunk and disorderly conduct in violation of Articles 80, 109, and 134 Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 880, 909 and 934 (2012). The panel sentenced appellant to a bad-conduct discharge, confinement for thirty months, forfeiture of all pay and allowances, and reduction to the grade of E-1.

This case comes before us both for review under Article 66, UCMJ, and as a petition for new trial under Article 73, UCMJ and Rule for Courts-Martial

hereinafter R.C.M.] 1210.[1]  Of appellant's three assignments of error, and his personally assigned issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), none merit discussion or relief.  Appellant's petition for new trial warrants discussion, but no relief.

## BACKGROUND

### A.  *Private First Class Medrano's Misconduct*

In the early morning hours of 3 September 2013, appellant returned to his barracks room on Camp Casey, Korea, after a night of drinking.  Appellant called his wife and began to argue with her on the phone.  At this time, appellant's roommate Private (PVT) JW, and their mutual friend, Private First Class (PFC) BM were watching television in the room.  Appellant asked PVT JW to turn the television off, because his wife thought he was watching it instead of paying attention to the phone conversation.  Private JW lowered the television's volume, but he did not turn it off. Upset, appellant turned the television off and threatened to punch it if it was turned on again.  Private JW turned the television back on, and appellant punched and shattered the screen.  Appellant and PVT JW began arguing and started to wrestle. Private JW held appellant in a "rear naked choke" hold until appellant "tapped out." Appellant then picked up a knife and stabbed PVT JW.  Private JW threw the appellant onto the bed and jumped on top of him.  Appellant continued to stab PVT JW while on the bed until PFC BM intervened. Private JW ran from the room and collapsed in the stairwell.  Appellant stabbed PVT JW eleven times, resulting in multiple injuries, to include a punctured lung and punctured spleen.  Private JW was hospitalized for nine days.

### B.  *Private First Class Medrano's Court-Martial Voir Dire*

On 5 March 2014, appellant proceeded to a general court-martial composed of officer and enlisted members.  The court-martial flyer listed the following charges: one specification of damaging non-military property; one specification of aggravated assault causing grievous bodily harm; one specification of aggravated assault with a means likely to cause death or grievous bodily harm; one specification of drunk and disorderly conduct; and one specification of attempted murder.

First Sergeant RJ (1SG) sat as one of the enlisted panel members.  At the time of PFC Medrano's court-martial trial, 1SG RJ was not the subject of any investigation or pending any criminal charges.  Approximately eight months after appellant's court-martial, 1SG RJ was charged with, among other things, multiple assaults against his estranged wife that, with the exception of one, occurred prior to

---

[1] The Court heard oral argument on the petition for a new trial at the George Washington University School of Law in Washington, DC.

2

his service as a panel member.[2] The most recent allegation of assault charged prior to his service on the court-martial panel was November 2012, approximately sixteen months prior to appellant's court-martial.

At the beginning of voir dire the military judge asked the prospective members to state "any matter which he or she believes may be a ground for challenge by either side." No matters were raised by the members. The military judge then asked the following questions:

> MJ: Having seen the accused and having read the charges and specifications, does anyone feel that you cannot give the accused a fair trial for any reason?
> [Negative Response from all panel members]
>
> [. . .]
>
> MJ: Has anyone or any member of your family, or anyone close to you personally ever been the victim of an offense similar to any of those charged in this case?
> [Negative response from all members]
>
> [. . .]
>
> MJ: Is any member aware of any matter which might raise a substantial question concerning your participation in this trial as a court member?
> [Negative response from all members]…

First Sergeant RJ answered the following questions affirmatively:

> ATC: "[H]as anyone ever been in a fight?"
>
> [. . .]
>
> ADC: "Have you ever worked with victims of assault in any capacity?"
>
> [. . .]

---

[2] On 19 March 2015, 1SG RJ pleaded guilty to three specifications of a violation of Article 128, UCMJ, assault, by pushing his wife on the chest with his hand, striking her on her head with his hand, and grabbing her arm and throwing her on a bed. He additionally pleaded guilty to one specification of a violation of Article 134, UCMJ, by failing to pay a just debt.

ADC: "Have you, a close friend, or relative ever been accused of something you did not do?"

First Sergeant RJ clarified his answer to these questions during individual voir dire. He explained that he was in a fight in high school. He also explained he worked with victims of assault in a professional capacity as a platoon sergeant, and he was mistakenly suspected as an altercation participant with German locals in 1994. He also disclosed that he was trained in boxing techniques, but he never used those techniques outside of training. First Sergeant RJ did not disclose any instance of the domestic assaults for which he was later convicted. No challenges for cause, nor any peremptory challenges, were brought against 1SG RJ.

## LAW AND DISCUSSION

### *Standard of Review*

A motion for a new trial is normally addressed "to the sound discretion of a trial judge and his ruling is not subject to review except in case of abuse...". *United States v. Thomas*, 3 U.S.C.M.A. 161, 11 C.M.R. 161, 164 (1953). As the court of first instance in regards to this petition, we may exercise de novo discretion in determining whether "sufficient grounds exist for granting" a new trial, but "this broad discretion must not be abused." *United States v. Bacon*, 12 M.J. 489, 492 (C.M.A. 1992).

### *A. Article 73, Petition for a New Trial*

In the case of a petition for a new trial, "[i]f the accused's case is pending before a Court of Criminal Appeals . . . the Judge Advocate General shall refer the petition to the appropriate court for action." UCMJ Art. 73. The appellant may "petition for a new trial on the grounds of newly discovered evidence or fraud on the court." A new trial will not be granted to "permit the accused to relitigate general matters which were presented below and decided adversely to him." *United States v. Bacon*, 12 M.J. 489, 492 (C.M.A. 1982) (citing *United States v. Troutt*, 24 C.M.R. 246, 248 (1957); *United States v. Johnson*, 28 C.M.R. 662, 686 (N.B.R.1959)). Appellant's petition alleges fraud on the court-martial by the willful concealment of a material ground for challenge. A new trial may be ordered when "the basis for challenge or disqualification was not known to the defense at the time of trial" due to "willful concealment of a material ground for challenge of the [panel] member." R.C.M. 1210(f) discussion at A21-98.

A hearing pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), is generally the appropriate method for finding facts relating to a panel member's failure to disclose. *United States v. Mack*, 41 M.J. 51, 55, (C.A.A.F. 1994)*; United States v. Humphreys,* 57 M.J. 83, 96 (C.A.A.F. 2002). Here, appellant

does not request a *DuBay* hearing, and we can rely on supplemental extracts from 1SG RJ's court-martial.

   *B. The McDonough Power Equip., Inc. Legal Test: Fraud on the Court-Martial*

     In addressing the question of whether a court member's failing to respond or giving an incorrect response prejudiced the rights of the appellant, we are guided by the U.S. Supreme Court's established test in *McDonough Power Equip., Inc v. Greenwood,* 464 U.S. 548 (1984). On a petition for new trial based on a juror's alleged fraud:

> [A] party must first demonstrate that a juror failed to
> answer honestly a material question on voir dire, and then
> further show that a correct response would have provided
> a valid basis for a challenge for cause.

464 U.S. at 556. This test is two parts that first requires a finding that the juror failed to answer honestly a material question before we move to consider whether a valid basis for a challenge for cause exists.

     Consistent with our superior court's analysis in *United States v. Taylor,* 44 M.J. 475 (C.A.A.F. 1996), we must first establish whether 1SG RJ failed to answer voir dire questions honestly, or willfully concealed his misconduct involving the assaults on his wife. Using the *Taylor* framework, if we find 1SG RJ's answers were not dishonest, we do not proceed to the second prong of the analysis.

     The issue in *Taylor* involved a colonel on an officer panel who, six months after sitting as a panel member in a premeditated murder, burglary, and larceny case, was convicted pursuant to his pleas of several sex offenses. These offenses included: seven specifications of sodomy (two involving a child under the age of 16); one specification of conduct unbecoming an officer by having an illicit relationship with a male staff sergeant assigned to the colonel's unit; five specifications of indecent acts upon a male under the age of 16; six specifications of indecent acts with an adult male; and three specifications of indecent act with a staff sergeant. The allegations were not known at trial and there was "no evidence that at the time he was empaneled he knew he was under investigation, nor is there evidence of either his actual prejudice against [appellant] or words or actions that show he might be prejudiced." *Taylor*, 44 M.J. at 477.

     The court's reasoning in *Taylor* followed that in *United States v. Aguon,* 851 F.2d 1158 (9th Cir. 1988), where the defendant discovered a juror in her case had pleaded guilty, subsequent to her trial, to similar charges involving "taking of kickbacks in connection with the letting of paving contracts." 851 F.2d at 1170. In

both *Aguon* and *Taylor* the juror/panel member was asked variations of the general fairness voir dire questions. In *Taylor* the questions were:

(1) Is any member of the court aware of any other matter which the member believes may be a grounds for challenge by either side against him? Negative response;

(2) [D]o all of you have the frame of mind that you would want court members to have if the roles were reversed and you were accused of committing a crime? Are all of you in that impartial mindset? Affirmative response from all members.

44 M.J at 477.

This court distinguishes dishonesty from answering questions narrowly. *United States v. Robinson*, ARMY 20120993, 2014 CCA LEXIS 917, at *3 (Army Ct. Crim. App. Dec. 23, 2014) (In a case alleging sexual assault of an adult victim, members were asked if a family member or somebody close to them were ever the victim of a "similar" offense. One member's failure to disclose his daughter was the victim of child sex offense was not dishonest; rather, he did not consider an offense against an adult and an offense against a child as "similar.").

In *United States v. Albaaj,* 65 M.J. 167 (C.A.A.F 2007), our superior court dealt with the dishonest juror. During initial voir dire by the military judge the panel was specifically asked "Does anyone know anyone named Emad, in any of the specifications?" Emad was the accused's brother and a witness at the court-martial. When Emad testified, a panel member recognized that his previous answer was incorrect and that in fact he did know him and worked with him. The panel member, however, did not correct his previous answer by informing the military judge. The court concluded that the failure by the panel member to correct his original answer regarding knowledge of a witness "violated his duty of candor" and the first prong of *McDonough Power Equip.* was satisfied. There was little room to quibble-the panel member either knew the witness with a unique name or he did not.

In consonance with our holding in *Robinson*, we find that 1SG RJ answered the questions narrowly rather than dishonestly. We disagree with appellant's view that the domestic assaults to which 1SG RJ pleaded guilty were similar to the charges on the flyer, thereby making his answers during voir dire wrong or dishonest. A domestic assault between a husband and wife consummated by a chest push, head slap, and arm pull is drastically different from an assault with a deadly weapon and attempted murder of a fellow soldier in the barracks. The flyer the panel members were presented with outlined charges that included attempted murder "by repeated stabbing with a knife." While not minimizing the serious nature of domestic assault, but rather comparing the assault offenses for which 1SG RJ was

convicted[3] with attempted murder, we do not find them sufficiently similar to appellant's charges.

Additionally, we find it is reasonable that 1SG RJ's physical interactions with his wife sixteen months previous would not come to mind as "similar" when the flyer described a physical altercation between two men that ended with an attempted murder. While lawyers may view appellant's charges and the charges of which 1SG RJ was convicted as escalating gradations of an assaultive offense, it is reasonable that the lay panel members would not view the offenses as similar. It is simply not intuitive that a "similar offense" to assault would be attempted murder by stabbing.

Given that we find 1SG RJ's answers were not dishonest, we find appellant has failed the first prong of *McDonough Power Equip.* and we conclude our analysis.

**CONCLUSION**

On consideration of the entire record, and the assigned errors, the petition for a new trial is DENIED. The findings and sentence are AFFIRMED.

Judge HERRING and Judge BURTON concur.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court

---

[3] First Sergeant RJ was originally additionally charged with two aggravated assaults on his wife, one in April 2011 by placing a knife to her neck, and the second by strangling her neck with his hands in November 2012, but those specifications were dismissed.